IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LeSHUN SMITH, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RONALD BAUDINO, et al., ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:24-cv-8884 <br><br> Judge Steven C. Seeger <br> Magistrate Judge Jeannice W. Appenteng |
| Consolidated for discovery purposes with: | |
| BRIAN McCLENDON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RONALD BAUDINO, et al., ) <br> ) <br> Defendants. ) | Case No. 1:24-cv-8882 <br><br> Judge Steven C. Seeger <br> Magistrate Judge Jeannice W. Appenteng |

## MEMORANDUM OPINION AND ORDER

Plaintiffs LeShun Smith and Brian McClendon, prison inmates who were previously housed at the Stateville Correctional Center, filed separate lawsuits alleging that defendants improperly removed them from the Northwestern Prison Education Program ("NPEP") in violation of their First and Fourteenth Amendment rights. According to plaintiffs, they were close to receiving bachelor's degrees through the program when defendant Ronald Baudino charged them with engaging in unauthorized organizational activity, a violation of prison policy. Plaintiffs appeared for a hearing before the prison Adjustment Committee, which consisted of

defendants Frances Milsap and Eddie Smith, Jr. The legitimacy of the hearing is contested but the parties agree that, relying on statements from five confidential informants ("CIs") and certain of plaintiffs' phone calls, the Adjustment Committee found plaintiffs guilty.

Defendant Charles L. Truitt, the former Warden at Stateville, accepted the Adjustment Committee's recommendation to impose various sanctions, including a disciplinary transfer that resulted in plaintiffs being removed from NPEP. Since the transfers, plaintiffs have been attempting to re-enroll in the program without success. They filed these lawsuits in July 2025 and the cases have been consolidated for discovery purposes. Currently before the Court is plaintiffs' motion to compel discovery, Dkt. 40. For the reasons below, the motion is denied.

## DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). A party may file a motion to compel under Rule 37 when another party provides an insufficient response to a discovery request. *Linet Americas, Inc. v. Hill-Rom Holdings, Inc.*, No. 21 CV 6890, 2025 WL 889480, at *1 (N.D. Ill. Mar. 17,

2

2025) (citing FED. R. CIV. P. 37(a)). "District courts enjoy broad discretion when considering motions to compel." *Id*.

### B. Analysis

Plaintiffs' motion seeks two categories of discovery: (1) the identities of the CIs, and (2) the individual defendants' personal social media usernames and emails.[1] The Court considers each in turn.

#### 1. Confidential Informants

Plaintiffs first seek to compel defendants to disclose the identities of the five CIs who accused them of engaging in unauthorized organizational activity. Dkt. 40 at 5-10; Dkt. 55 at 2-7; Dkt. 40-1, Request for Production 5; Dkt. 40-2, Interrogatory 2. Defendants have asserted the informer's privilege, which allows the government to "withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 53, 59 (1957). The privilege also applies to civil cases in recognition of "the common-sense notion that individuals who offer their assistance to a government investigation may later be targeted for reprisal from those upset by the investigation." *Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989).

By preserving a citizen's anonymity, the privilege encourages individuals to report crimes or other wrongdoing, which furthers and protects the public interest in effective law enforcement. *Roviaro*, 353 U.S. at 59. "To overcome the privilege,

---

[1] The Court addressed a third category of documents during an October 9, 2025 hearing, Dkt. 70, and need not repeat the ruling here.

3

the party seeking disclosure has the burden of demonstrating a need for the identity of the informant that outweighs the public's interest in effective law enforcement." *Guzman v. City of Chicago*, 242 F.R.D. 443, 447 (N.D. Ill. 2007) (citing *United States v. Valles*, 41 F.3d 355, 358 (7th Cir. 1994)). That is, "the discovery proponent must show that the identification of the informant or of a communication is essential to a balanced measure of the issues and the fair administration of justice." *Id.* (citing *Roviaro*, 353 U.S. at 60-61). In assessing whether to uphold the privilege, *Roviaro* "dictates a broad inquiry into the 'particular circumstances of each case.'" *Wade v. Ramos*, 26 F.4th 440, 445 (7th Cir. 2022) (quoting *Roviaro*, 353 U.S. at 62).

The Court finds that the balance in this case weighs against disclosing the CIs' identities. To begin, since this is a civil case, plaintiffs "have less claim to discovery into [the CI's] identit[ies] than they would if they were facing criminal prosecution." *Wade v. Ramos*, 26 F.4th 440, 445 (7th Cir. 2022) (citing *Roviaro*, 353 U.S. at 60) (The privilege is "more likely to give way in a criminal proceeding than in a civil one."). Additionally, plaintiffs have not demonstrated that the CIs' names are relevant. According to plaintiffs, the identities will help them understand and test defendants' reasons for finding the CIs credible. Dkt. 40 at 7-8, Dkt. 55 at 4-5. But plaintiffs do not articulate how the CIs' names would reveal anything about defendants' decisions or states of mind. *See Guzman*, 242 F.R.D. at 448 ("Plaintiff seems to suggest that, based on John Doe's identity, it would be clear that he was an unreliable informer. The illogic of the argument is manifest. There is no relationship between Doe's name and his reliability.").

4

At the same time, the law enforcement interest here is significant. Plaintiffs are prison inmates and "[t]he government interest in institutional safety and an efficient disciplinary system are especially implicated when inculpatory information is provided by confidential informants because, 'revealing the names of informants ... could lead to the death or serious injury of some or all of the informants.'" *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir. 1985). *See also Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004) ("[P]risons are dangerous places."). Additionally, as defendants note, "if confidential informants learn that all a prisoner needs to do to learn their identities is file a lawsuit, they will stop cooperating with prison authorities altogether rather than risk exposure." Dkt. 52 at 5. Notably, plaintiffs concede that defendants "are rightly concerned about the security implications of letting prisoners know who acts as confidential informants." Dkt. 40 at 9.

Plaintiffs argue that the balance still weighs in favor of disclosure but the cases they cite are distinguishable. In *Johnson v. Dye*, No. 3:19-CV-00444-GCS, 2021 WL 4456552 (S.D. Ill. Sept. 29, 2021), for example, the plaintiff was disciplined based on statements from two CIs, one interviewed by defendant Dye and the other interviewed by defendant Hughey. *Id.* at *2. During Dye's deposition, he provided information about CI 2's statement that differed from the written incident report. He also testified that he "did not recall the full interview" and "the best way to determine what information CI 2 provided investigators would be to ask him directly." *Id.* Similarly, Hughey could not recall his interview with CI 1, including "the informant's identity or the way in which the informant confirmed the

5

statements from CI 2." *Id.* Given these inconsistencies, the court determined that plaintiff's need to know the CIs' names outweighed the law enforcement interest in the privilege. *Id.* at *5.

Here, there is no evidence that the defendants are unaware of the informants' identities or the details of their statements. Nor do plaintiffs suggest that the informants do not exist. *Cf. Hampton v. Hanrahan*, 600 F.2d 600, 637-39 (7th Cir. 1979) (allowing disclosure of CI where the plaintiffs presented objective evidence which called into question the very existence of the informant). Absent a showing of relevance, moreover, the Court need not address plaintiffs' arguments regarding the format of production or counsel's duty to protect confidential information. Dkt. 40 at 9-10; Dkt. 55 at 7.

For all these reasons, plaintiffs have not demonstrated that they have a need for the identities of the CIs that outweighs the security concerns inherent in letting prisoners know who acts as confidential informants. Plaintiffs' motion to compel this information is denied.

### 2.     Defendants' Personal Social Media and Email

Plaintiffs also seek to compel the usernames of defendants' personal social media accounts and ESI from their social media, personal emails, and text messages. Dkt. 40 at 12; Dkt. 55 at 9; Dkt. 40-2, Interrogatory 5. Defendants have agreed to produce their work ESI but plaintiffs want more, arguing that "personal social media accounts of correctional officer defendants is highly relevant to determining motivations and prejudice." Dkt. 40 at 13. In support, plaintiffs direct

6

the Court to *Hampton v. Kink*, No. 18 CV 550, 2021 WL 122958 (S.D. Ill. Jan. 13, 2021), a case involving a transgender former inmate who alleged various constitutional violations related to her gender dysphoria. *Id.* at *1. During discovery, an anonymous source sent plaintiff sample postings from the defendants' private Facebook page that were allegedly homophobic, racist, and transphobic. *Id.* at *2. Based on that information, the court ordered the defendants to conduct an ESI search of the defendants' Facebook pages for any posts mentioning the plaintiff or transgender rights/prisoners in general. *Id.* at *3.

Unlike the plaintiff in *Hampton*, plaintiffs in this case do not provide any basis for believing that defendants privately posted, received, or sent any social media or electronic communications that have any bearing on this lawsuit. Plaintiffs' mere speculation that such conversations and posts may exist is insufficient. *See, e.g., Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19 CV 2436, 2019 WL 6052366, at *3 (N.D. Ill. Nov. 15, 2019) (denying motion to compel that was based on speculation, finding it "amounts to an impermissible fishing expedition."). Plaintiffs insist that "[l]imited searches of social media accounts, phone calls, and text messages relating to the claims in a civil case are not unheard of." Dkt. 55 at 10. That may be, but the cases they rely on are distinguishable and do not alter the Court's analysis. *Id.* (citing *Stallings v. City of Johnston City*, No. 13-CV-422-DRH-SCW, 2014 WL 2061669 (S.D. Ill. May 19, 2014) (ordering production of unredacted Facebook pages where former city employee alleging wrongful termination produced redacted pages); *Estate of Logan v. City of South*

7

*Bend*, No. 3:19-CV-495-DRL-MGG, 2021 WL 389412 (N.D. Ind. Feb. 3, 2021) (denying motion to compel a forensic inspection of the defendant's cell phone); *Doe v. Purdue Univ.*, No. 2:17-CV-33-JPK, 2021 U.S. Dist. LEXIS 124257 (N.D. Ind. July 2, 2021) (sanctioning plaintiff for destroying his Snapchat data in violation of duty to preserve). Accordingly, the motion to compel personal social media information is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion to compel [40] is denied.

**So Ordered.**

Date: 10/15/2025

**Jeannice W. Appenteng**
**United States Magistrate Judge**