# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| LeSHUN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-8884 |
| v. | ) | |
| | ) | Judge Steven C. Seeger |
| RONALD BAUDINO, et al., | ) | Magistrate Judge Jeannice W. Appenteng |
| | ) | |
| Defendants. | ) | |
| | ) | |

Consolidated for discovery purposes with:

| | | |
|---|---|---|
| BRIAN McCLENDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-8882 |
| v. | ) | |
| | ) | Judge Steven C. Seeger |
| RONALD BAUDINO, et al., | ) | Magistrate Judge Jeannice W. Appenteng |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs LeShun Smith and Brian McClendon, prison inmates who were previously housed at the Stateville Correctional Center, filed separate lawsuits alleging that defendants improperly removed them from the Northwestern Prison Education Program ("NPEP") in violation of their First and Fourteenth Amendment rights. The cases have been consolidated for discovery purposes. Before the Court is a motion from non-parties Northwestern University and Professor Jennifer Lackey to modify subpoenas to produce documents, Dkt. 71. For the reasons below, the motion is granted in part and denied in part.

**BACKGROUND**

NPEP provides college educations to individuals incarcerated in the Illinois

Department of Corrections ("IDOC"). Courses are conducted in person at IDOC

facilities supporting the program, led by tenured and adjunct Northwestern faculty,

and supported by various NPEP volunteers. Dkt. 71 at 3. Students admitted to the

program are eligible to earn a bachelor's degree from Northwestern's School of

Professional Studies. *Id*. Plaintiffs were students in the NPEP program at the

Stateville facility.

A.     **Plaintiffs' Removal from NPEP**

Plaintiffs allege that in the fall of 2022, NPEP students were admonished for

inappropriate letters sent to female NPEP volunteers. Plaintiffs "had conversations

with" fellow NPEP student-inmates Orlando Watkins, Pierre James, and/or

Broderick Hollins "to ensure that none of the staff or volunteers were harassed or

otherwise discouraged from" supporting the program. Dkt. 46 ¶¶ 28, 30, 31; Dkt. 76

at 2-3. In particular, plaintiffs had recorded phone conversations with Hollins where

they discussed "the need to observe proper decorum when interacting with the

Northwestern staff and volunteers," and expressed "concern" that peers made

volunteers feel uncomfortable. Dkt. 46 ¶¶ 31, 32. Prison staff investigated plaintiffs'

conduct and charged them with engaging in unauthorized organizational activity, a

violation of prison policy. Plaintiffs appeared for a hearing before the prison

Adjustment Committee, which found them guilty. The Warden accepted the

Adjustment Committee's recommendation to impose various sanctions, including a

disciplinary transfer that resulted in plaintiffs being removed from NPEP. These lawsuits followed.

### B.    The Subpoenas

On June 10, 2025, defendants served Northwestern University and Professor Lackey ("respondents") with subpoenas for documents relating to plaintiffs, Watkins, James, and Hollins.[1] Dkts. 71-1, 71-2. Respondents began the process of collecting responsive documents and had several conversations with defense counsel about the timing and scope of production. Dkt. 71-3 at 3; Dkt. 76 at 3. On August 11, 2025, respondents served formal objections and responses to both subpoenas, stating that they were still collecting and reviewing documents and would produce them "at the earliest reasonable date," but not before each student received proper notice pursuant to the Family Education Rights and Privacy Act ("FERPA). Dkt. 71-3 at 3. Respondents engaged a vendor to host the documents, Dkt. 71 at 5, and on September 5, 2025, they informed defendants that they had "completed the collection of documents to review" and "loaded [them] onto a platform." Dkt. 76-1 at 11. Respondents stated that they expected to finish reviewing the documents by the end of the following week and then "serve notices under FERPA." Dkt. 76-1 at 11.

The situation changed, at least in respondents' view, on September 10, 2025. In an email that day, respondents informed defendants that they believed the burden of completing the review had become undue because defendants moved to

---

[1] The subpoenas also sought documents relating to other unnamed NPEP students but respondents and defendants agreed to limit the scope to the five named individuals. Dkt. 71 at 4 n.1. This opinion likewise addresses only the five individuals.

dismiss plaintiffs' amended complaints. Dkt. 71-4. Respondents explained that it was taking longer than anticipated to review the more than 7,000 documents collected, and noted that if the cases were dismissed, "our significant efforts as a third party to respond to the subpoenas will have been unnecessary." *Id.*

Following additional meet and confer efforts, respondents agreed to proceed with the review if defendants agreed to limit the scope of the subpoenas to only those documents concerning academic records and academic progress of the plaintiffs and documents concerning complaints by or about either of the plaintiffs concerning Northwestern faculty, staff or volunteers. Dkt. 71 at 6 n.2. Defendants continued to insist on receiving such documents for Hollins as well, which respondents explained did not materially minimize the burden of review given that Hollins is no longer incarcerated and is included on many group communications. *Id.* At that point, the parties were at an impasse.

### C.    Respondents' Motion

Respondents moved to modify the subpoenas, arguing that any response should be delayed until after the District Judge rules on defendants' motions to dismiss. Dkt. 71 at 11-12. Alternatively, respondents asked the Court to limit production to academic records about the plaintiffs and complaints by or against either plaintiff concerning "Northwestern faculty and volunteers or Northwestern staff." *Id* at 12. In their reply brief, respondents newly argue that the subpoenas should be quashed in their entirety for lack of relevance. Defendants object to

waiting for the records and seek production of materials relating to plaintiffs,

Hollins, James and Watkins. Dkt. 76.

## DISCUSSION

### A.     Standard of Review

"'The scope of material that may be secured by Subpoena is as broad as that

permitted under the discovery rules,' and consists of evidence that is relevant to any

party's claim or defense and proportional to the needs of the case." *Gonzalez v.*

*Guevara*, No. 23 CV 14281, 2025 WL 2930794, at \*2 (N.D. Ill. Oct. 15, 2025)

(quoting *Bishop v. White*, No. 16 CV 6040, 2020 WL 6149567, at \*4 (N.D. Ill. Oct. 20,

2020)). Under Rule 45(d), a court must, on timely motion, quash or modify a

subpoena that "requires disclosure of privileged or other protected matters, if no

exception or waiver applies," or "subjects a person to undue burden." FED. R. CIV. P.

45(d)(3)(A)(iii)-(iv). In assessing whether a subpoena imposes an undue burden,

courts consider whether "the burden of compliance with it would exceed the benefit

of production of the material sought by it." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d

923, 927 (7th Cir. 2004). "As with most discovery matters, the decision about

whether to quash a subpoena rests squarely within the Court's discretion."

*Gonzalez*, 2025 WL 2930794, at \*2.

### B.     Analysis

#### 1.     Timing of Compliance

The Court begins with respondents' argument that their compliance with the

subpoenas should be stayed pending a ruling on defendants' motions to dismiss.

Dkt. 71 at 11-12. At the time defendants served the subpoenas in June 2025, plaintiffs' original September 2024 complaints remained operative. Dkt. 1. On July 29, 2025, however, plaintiffs amended the complaints and exchanged their race discrimination claims for First Amendment claims. Dkt. 46. Respondents argue that by moving to dismiss the amended complaints, defendants effectively conceded that the information sought in the subpoenas "will never factor into the case." Dkt. 71 at 11. In respondents' view, it is unduly burdensome for them to answer subpoenas in connection with lawsuits that may be dismissed. *Id.* This Court disagrees.

To begin, discovery remains ongoing notwithstanding the motions to dismiss, and is set to close on December 19, 2025. Dkt. 83. *See Robinson v. Walgreen Co.*, No. 20 CV 50288, 2021 WL 2453069, at *1 (N.D. Ill. June 16, 2021) ("There is no requirement that discovery cease during the pendency of a motion to dismiss."). Moreover, the case respondents rely on to support a stay is distinguishable. The plaintiff in *K.S. v. Wallar*, No. 1:19-CV-04126-TWP-DLP, 2020 WL 13558299 (S.D. Ind. Apr. 29, 2020), issued a non-party subpoena to Wabash College ("Wabash"). *Id.* Wabash produced over 700 pages of documents but objected to certain requests. *Id.* After plaintiff agreed to settle her claims against all defendants, Wabash argued that it should no longer have to comply with the subpoena. *Id.* at *3. The court agreed, explaining that since plaintiff had no further need for the information to prove her case, the burden of production outweighed its likely benefit. *Id.* at *4.

Here, plaintiffs' cases are still active and the Court has not otherwise stayed the fact discovery schedule. The motion to modify the time to answer the subpoenas until after a ruling on the motions to dismiss is therefore denied.

### 2. Relevance and Burden

Respondents have at all times maintained that the burden of producing the documents is not proportional to the needs of the cases. Dkt. 71 at 8-11. In response to arguments raised by defendants, respondents also assert in their reply brief that defendants have not demonstrated the requested documents are relevant. Dkt. 80 at 3-5. *See Hammond, Kennedy, Whitney & Co. v. Honeywell Int'l, Inc.*, No. 16 CV 9808, 2018 WL 587182, at *2 (N.D. Ill. Jan. 29, 2018) ("Although a party raising an argument for the first time in a reply brief generally waives that argument, . . . a reply brief may raise 'new' issues when responding to new arguments from the non-moving party's response brief.") (internal citations omitted).

The lawsuits concern whether defendants: (1) provided plaintiffs with constitutionally required due process before terminating them from the NPEP program, and (2) improperly disciplined plaintiffs for engaging in protected speech. In respondents' view, both issues turn on information within the parties' possession, not theirs. Dkt. 80 at 3-5 (insisting that "any relevant information is in Defendants' files."). Respondents object to producing documents they believe defendants will use merely to justify the ultimate decision to discipline plaintiffs rather than to support the substantive claims and defenses. *Id*. at 3-5.

7

Regarding burden, respondents identify two primary concerns: (1) the administrative burden of collection and production; and (2) students' privacy interests. Dkt. 71 at 8-10.

### a.    Documents Relating to Plaintiffs

To the extent the documents relate to the named plaintiffs, the Court finds that they are relevant. Plaintiffs allege violations of their rights arising from their participation in the NPEP program and statements they purportedly made about the program. It is certainly possible that records referencing (1) plaintiffs and their academic progress, or (2) complaints by or against plaintiffs concerning Northwestern faculty, staff, and volunteers, may reveal information that bears on these lawsuits. Notably, before defendants filed the motions to dismiss, respondents were willing to provide these categories of documents. Dkt. 71 at 6 n.2; Dkt. 76-1 at 4. Further, respondents have acknowledged that the volume of responsive documents will likely be small. Dkt. 71-4 at 2 (email from T. Truax to defense counsel dated 9/10/2025 stating "I do not anticipate that any ultimate production would be a large volume (most of what we are reviewing falls outside the parameters of the subpoena as we have objected to it).").

As for respondents' concerns about their FERPA obligations and their students' privacy interests, the burden is minimal because despite their standing here, plaintiffs do not object to the production of their own records. *See Simon v. Nw. Univ.*, No. 15 CV 1433, 2017 WL 66818, at *2 (N.D. Ill. Jan. 6, 2017) (a party has standing to challenge a subpoena "issued by another party to the litigation and

directed to a non-party" if "the movant has a claim of privilege attached to the information sought or the subpoena implicates the movant's privacy interests."). Plaintiffs shall work with respondents to expeditiously resolve any FERPA obligations relating to them.

On the record presented here, respondents' motion to quash the subpoenas as to documents relating to plaintiffs and their academic progress and complaints by or against plaintiffs concerning Northwestern faculty, staff, and volunteers is denied.

### b. Documents Relating to Non-Party Students

The calculus is different for records relating to Watkins, James, and Hollins. Defendants fail to articulate how academic records for these individuals have any bearing on whether plaintiffs received due process prior to being removed from the NPEP program or engaged in protected speech. Moreover, none of these individuals is a party to plaintiffs' lawsuits so disclosing their private academic records is unduly invasive.

Further, defendants provide no rationale for how complaints made by or against Watkins, James, and Hollins, found only in the possession of a third party, will shed light on the constitutionality of plaintiffs' disciplinary hearings, defendants' decision-making process, or whether plaintiffs experienced retaliation for exercising their First Amendment rights. The mere fact that plaintiffs "conversed with" Watkins, James, and Hollins does not establish relevance. Dkt. 76 at 5-6.

On the record before the Court, defendants have not sufficiently articulated how records concerning the three non-party students are relevant here, or demonstrated that the burden of production is proportional to the needs of these cases. Accordingly, respondents' motion to quash the subpoenas for records relating to Watkins, James, and Hollins is granted.

## CONCLUSION

For the reasons stated above, non-parties Northwestern University and Jennifer Lackey's motion to modify subpoena to produce documents [71] is granted in part and denied in part.

**So Ordered.**

Date: 11/20/2025

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**